Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| ANA I. GONZÁLEZ GUTIÉRREZ<br><br>Recurrida<br><br>V.<br><br>DR. MIGUEL RAMÍREZ RIPOLL Y SU ESPOSA, MARY DE RAMÍREZ, AMBOS DE POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS, DR. WILLIAM ARTURO TOWNSEND PICÓ Y SU ESPOSA, JANE TOWNSEND, AMBOS DE POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS, CLÍNICA VISTA OPHTHALMOLOGY AMBULATORY CENTER, A, B, C PERSONAS NATURALES Y JURÍDICAS, X, Y, Z COMPAÑÍA DE SEGUROS<br><br>Peticionarios | KLCE202400262 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.:<br><br>SJ2021CV00219<br><br>Sobre:<br><br>Impericia Médica, Daños y Perjuicios |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparecen el doctor Miguel Ramírez Ripoll, en adelante el Dr. Ramírez o el peticionario, y otros, en conjunto los peticionarios, quienes nos solicitan que revoquemos una *Resolución* emitida el 29 de diciembre de 2023 y notificada el 2 de enero de 2024. Mediante la misma, el Tribunal de Primera Instancia, Sala de San Juan,

Número Identificador
RES2024_____

en adelante TPI, declaró no ha lugar la *Moción en Solicitud de Sentencia Sumaria* presentada por el Dr. Ramírez.

Por los fundamentos que expondremos a continuación, se deniega la expedición del recurso de *certiorari*.

**-I-**

El presente caso tiene su génesis en una acción sobre impericia médica, daños y perjuicios, instada por la señora Ana I. González Gutiérrez, en adelante la señora González o la recurrida, contra el Dr. Ramírez y otros.[1] La señora González alegó que el peticionario le practicó una cirugía de catarata y, que posterior a la intervención médica, "quedó dramáticamente afectada de dicho ojo". En su opinión, el Dr. Ramírez y el Dr. William Arturo Townsend Picó, no procedieron conforme a la mejor práctica prevaleciente en la medicina en el manejo y tratamiento de su condición. Arguyó que estos no le realizaron los exámenes necesarios porque no "agota[ron] los medios de diagnóstico diferencial que el estado del conocimiento pone a disposición de la profesión médica". En consecuencia, la recurrida afirmó que existe un nexo causal entre el daño y la actuación negligente de los médicos, razón por la cual les exigió una compensación de $500,000.

Por su parte, los peticionarios presentaron una *Contestación a Demanda*, en la que admitieron unos hechos, negaron otros e incluyeron como defensas afirmativas la aplicabilidad de la doctrina de error de juicio honesto y razonable porque cumplieron con los estándares reconocidos por la comunidad médica.[2]

---

[1] Apéndice de los peticionarios, págs. 1-5.
[2] *Id.*, págs. 6-9.

Posteriormente, los peticionarios presentaron una *Moción en Solicitud de Sentencia Sumaria*, mediante la cual alegaron que, conforme a la opinión del perito de la señora González, el tratamiento brindado por el Dr. Ramírez fue correcto y la recurrida firmó un consentimiento informado en el que se le informaron los riesgos y beneficios de la operación.[3] Del mismo modo, el perito indicó que las visitas postoperatorias fueron adecuadas y cumplieron con el estándar de la mejor práctica de la medicina. Específicamente, abundó que el progreso presentado por la recurrida, posterior a la queratometría y la tomografía, "es lo que se esperaría en términos del progreso de la condición" y que la corrección de la vista 20/40 "es buena para un paciente que tenía cataratas". También, explicó que después de presentar la complicación, el Dr. Ramírez refirió a la señora González a un retinólogo, conforme a los estándares de la práctica profesional. En tanto el propio perito de la recurrida estableció que el tratamiento fue adecuado y, en la medida en que la recurrida no presentó prueba sobre la negligencia, ni demostró que los alegados daños respondieron a un acto u omisión durante la intervención médica, el Dr. Ramírez solicitó la desestimación de la demanda en su contra.

En cambio, la señora González presentó una *Oposición a Solicitud de Sentencia Sumaria, Conforme la Regla 36.3(b) de Procedimiento Civil*, en la que adujo que "la mejor práctica de la medicina" es un fundamento general que no puede convertirse en una salida airosa para la clase médica.[4] Opinó que los médicos siempre deben proveer

---

[3] *Id.*, págs. 10-29.
[4] *Id.*, págs. 156-165.

su experiencia, conocimiento e inteligencia para tratar los casos. Arguyó que el Dr. Ramírez no cumplió con las expectativas en el desempeño de su profesión, por lo que debe responder. Finalmente, solicitó la continuidad del caso y que se obligue a los peticionarios a nombrar un perito y a proveer un informe pericial.

Después de varios trámites procesales que resulta innecesario pormenorizar para la resolución de la controversia ante nos, el TPI declaró no ha lugar la solicitud de sentencia sumaria y acogió los siguientes hechos incontrovertidos: (1) La Sra. Ana González Gutiérrez fue a la oficina del Dr. Miguel Ramírez Ripoll porque estaba teniendo pérdida de visión en el ojo izquierdo por catarata, (2) el 2 de marzo de 2017, la Sra. González Gutiérrez fue sometida a una cirugía de cataratas del ojo izquierdo por el Dr. Ramírez Ripoll y (3) la Sra. González Gutiérrez sufrió una ruptura de cápsula, una complicación que ocurre con una incidencia del 1 al 6% en las cirugías de cataratas.[5] Del mismo modo, identificó los siguientes hechos en controversia: (1) Si el Dr. Ramírez Ripoll le ofreció a la demandante un cuidado médico conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, que satisface las exigencias generalmente reconocidas por la profesión, (2) si la demandante ofreció un consentimiento informado para el procedimiento médico-quirúrgico, (3) si la alegada falta de consentimiento informado fue la causa próxima de los daños alegados, (4) la negligencia y/o culpa del Dr. Ramírez Ripoll, si alguna, (5) la negligencia contribuyente incurrida por la parte

---

[5] *Id.*, págs. 190-203.

demandante, si alguna y (6) el valor de los daños alegados.[6]

En síntesis, el foro inferior determinó:

> …que las controversias presentadas contienen elementos subjetivos de intención, propósitos mentales o negligencia, y credibilidad que, según la jurisprudencia aplicable, no deben ser dirimidos mediante el mecanismo extraordinario de sentencia sumaria. La prueba documental presentada por la parte promovente en su solicitud de sentencia sumaria consiste principalmente en fragmentos tomados de la deposición del perito de la parte demandante, Dr. Andújar Alejandro… No obstante, determinamos que, para dirimir adecuadamente las alegaciones de negligencia presentadas por la parte demandante, así como también la credibilidad de los testimonios de las partes y las opiniones periciales del Dr. Andújar Alejandro vertidas en su informe pericial, es menester la celebración de una vista evidenciaria. Por esto, determinamos que existen hechos en controversia que en estos momentos impiden a este foro de resolver por la vía sumaria el caso a favor de alguna de las partes.[7]

Insatisfecho, el Dr. Ramírez presentó una *Moción Solicitando Reconsideración*[8], la señora González se opuso[9] y el TPI declaró no ha lugar la solicitud[10].

Aun inconformes, los peticionarios recurren ante nos mediante una *Petición de Certiorari* en la que alegan que el TPI cometió el siguiente error:

> Erró el Tribunal de Primera Instancia al denegar *Moción en* Solicitud de Sentencia *Sumaria* y al considerar que: 1) existían elementos subjetivos en controversia; 2) la prueba documental consistió en fragmentos de la deposición tomada al perito de la parte recurrida; y 3) entender que era necesaria una vista evidenciaria.

Conforme la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este Tribunal puede "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos … [ello] con el propósito de lograr su más justo y eficiente despacho…".[11] En

---

[6] *Id.*
[7] *Id.*
[8] *Id.*, págs. 204-209.
[9] *Id.*, págs. 210-216.
[10] *Id.*, pág. 218.
[11] Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5).

consideración a lo anterior, eximimos a la parte recurrida de presentar su alegato en oposición.

Luego de revisar el escrito de los peticionarios y los documentos que obran en autos, estamos en posición de resolver.

**-II-**

**A.**

Como cuestión de umbral, la Regla 52.1 de Procedimiento Civil establece el alcance de la revisión discrecional de las resoluciones u órdenes interlocutorias emitidas por el Tribunal de Primera Instancia en los siguientes términos:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[…].[12]

**1.**

Rebasado el umbral establecido en la Regla 52.1 de Procedimiento Civil, *supra*, corresponde a este tribunal intermedio determinar si procede revisar la determinación interlocutoria recurrida.

A esos efectos, el auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho

---

[12] Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

cometido por un tribunal inferior.[13] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[14] Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[15]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[16]

---

[13] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).

[14] *Torres González v. Zaragoza Meléndez*, supra, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729; *García v. Padró*, supra, pág. 334.

[15] *Torres González v. Zaragoza Meléndez*, supra, pág. 847; *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

[16] *Torres González v. Zaragoza Meléndez*, supra, pág. 848; *Municipio v. JRO Construction*, supra; 4 LPRA Ap. XXII-B, R. 40.

**B.**

En nuestro ordenamiento jurídico el mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo.[17] Así pues, para adjudicar en los méritos una controversia de forma sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente.[18]

En *Meléndez González et al. v. M. Cuebas,* el Tribunal Supremo de Puerto Rico, en adelante TSPR, estableció el estándar específico que debe utilizar el Tribunal de Apelaciones para revisar una sentencia sumaria, a saber:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, *supra*, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, … y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

---

[17] *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).

[18] *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019); *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224-225 (2015).

**Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil … y discutidos en *SLG Zapata-Rivera v. JF Montalvo*….

**Tercero**, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y, por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[19]

### C.

Según dispone el Art. 1802, la responsabilidad civil extracontractual por impericia médica se impone por la culpa o negligencia de un facultativo médico.[20] Esta doctrina civilista es aplicable cuando un profesional de la salud actúa contrario a la norma mínima de cuidado médico exigible a la luz de los modernos medios de comunicación y enseñanza, y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, que satisfacen las exigencias generalmente reconocidas por la profesión.[21]

Así pues, toda persona que inste una acción en daños por impericia médica está obligada a demostrar: (1) la ocurrencia de un acto médico culposo o negligente; (2) la

---

[19] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119, 122 (2015). (Énfasis en el original) (citas omitidas).
[20] *Cruz Flores et. al. v. Hosp. Ryder et al.*, 210 DPR 465, 486-487 (2022); *López v. Dr. Canizares*, 163 DPR 119, 132 (2004); 31 LPRA sec. 5141. Cabe destacar que el Código Civil de Puerto Rico de 1930, vigente al momento en que surgieron los hechos del presente caso, fue derogado y sustituido mediante la Ley Núm. 55-2020, aprobada el 1 de junio de 2020, conocida como Código Civil de Puerto Rico de 2020.
[21] *Cruz Flores et. al. v. Hosp. Ryder et al.*, *supra*, pág. 487; *Arrieta v. De la Vega*, 165 DPR 538, 549 (2005).

producción de un daño real y (3) la relación causal entre el acto médico y el daño sufrido.[22] Es decir, para que el demandante prospere en su causa de acción, debe demostrar mediante preponderancia de la prueba que la acción negligente del médico fue el factor que con mayor probabilidad ocasionó el daño.[23] Además, debe establecer el vínculo causal a tenor con el Artículo 1802 del Código Civil, *supra*.

Finalmente, el TSPR ha reconocido, que el médico posee discreción para formular un juicio profesional en cuanto al diagnóstico y tratamiento de cada paciente.[24] Lo anterior implica que, el médico está exento de responsabilidad civil si el tratamiento brindado, aun cuando erróneo, está enmarcado dentro de los linderos de lo razonable y es aceptado por la comunidad médica.[25]

**D.**

Por otro lado, es norma firmemente establecida que el consentimiento informado y expreso del paciente es indispensable, previo a llevar a cabo un procedimiento médico invasivo al cuerpo humano.[26] Este precepto surge como corolario del derecho a la intimidad consagrado expresamente en la Constitución del Estado Libre Asociado de Puerto Rico.[27] De modo que, los médicos tienen la obligación de ofrecer a sus pacientes toda la información que sea indispensable para comprender la naturaleza de ciertos procedimientos; como mínimo, deben revelar los

---

[22] *Soto Cabral v. ELA*, 138 DPR 298, 309 (1995).
[23] *Blás v. Hosp. Guadalupe*, 146 DPR 267, 322 (1998); *Rodríguez Crespo v. Hernández*, 121 DPR 639, 650 (1988); *Ríos Ruiz v. Mark*, 119 DPR 816 (1987).
[24] *Arrieta v. De la Vega, supra*, pág. 549
[25] *Santiago Otero v. Méndez*, 135 DPR 540, 550 (1994); *Pérez Torres v. Bladuell Ramos*, 120 DPR 295, 302 (1988).
[26] *Cruz Flores et. al. v. Hosp. Ryder et al.*, *supra*, pág. 492; *Martínez Marrero v. González Droz*, 180 DPR 579, 593 (2011); *Rodríguez Crespo v. Hernández*, *supra*, pág. 664; *Rojas v. Maldonado*, 68 DPR 818, 827 (1948).
[27] Art. II, Sec. 8, Const. PR, LPRA, Tomo 1.

datos de sus beneficios, los riesgos y las posibles complicaciones.[28]

Conforme a lo anterior, el TSPR especificó que la clase médica está obligada a "informar aquellos riesgos, conforme lo establecido por la práctica prevaleciente de la medicina".[29]

Así pues, los elementos esenciales en una reclamación por daños y perjuicios basados en una alegación de impericia médica, por no obtener el médico un consentimiento informado, antes de efectuar una operación o un tratamiento, son: (1) si el médico tenía el deber de divulgar determinada información, (2) la información específica que debió ser divulgada y (3) si la causa próxima del daño alegado fue la falta de divulgación de los riesgos implícitos en dicha operación o tratamiento.[30]

## E.

Por otro lado, es norma firmemente establecida que los tribunales apelativos no intervienen con el manejo de los casos por parte del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[31] Conviene destacar que

---

[28] *Martínez Marrero v. González Droz, supra.*
[29] *Cruz Flores et. al. v. Hosp. Ryder et al., supra,* pág. 493; *Sepúlveda de Arrieta v. Barreto,* 137 DPR 735, 753 (1994).
[30] *Cruz Flores et. al. v. Hosp. Ryder et al., supra; Sepúlveda de Arrieta v. Barreto, supra,* págs. 756-757.
[31] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón,* 2023 TSPR 145, 213 DPR __ (2023); *Cruz Flores v. Hospital Ryder Memorial Inc., supra,* pág. 497; *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 338 (2021); *VS PR, LLC v. Drift-Wind, Inc.,* 207 DPR 253, 273 (2021); *Umpierre Matos v. Juelle, Mejía,* 203 DPR 254, 276 (2019); *Citibank*

"la discreción se fundamenta [,entre otras,] en el contacto con los litigantes y la prueba que se haya presentado"[32] ante el foro sentenciador. Por esta razón, se presume que el Tribunal de Primera Instancia conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar para llegar eventualmente a una disposición final.[33]

De modo que, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia salvo que incurra en algunas de las conductas previamente mencionadas y si a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación".[34] Específicamente, el TSPR ha delimitado las instancias en las que un tribunal abusa de su discreción de la siguiente manera:

> [C]uando no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o cuando, [...] [tras] considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[35]

**-III-**

El peticionario alega que la recurrida no cumplió con los requisitos de forma de la regla 36.3 de las de Procedimiento Civil, *supra*. Además, el TPI no determinó

---

*et al. v. ACBI et al.*, 200 DPR 724, 736 (2018); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015).
[32] *Citibank v. ACBI et al.*, *supra*, pág. 736.
[33] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Mejías et al. v. Carrasquillo et al,* 185 DPR 288, 306-307 (2012). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*.
[34] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).
[35] *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*. Véase, además, *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 2023 TSPR 65 (2023); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 435 (2013) (citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)).

por qué los hechos propuestos por aquel estaban en controversia. Finalmente, como no se controvirtieron los hechos presentados en la solicitud de sentencia sumaria, procedía desestimar la demanda con perjuicio, porque la recurrida carece de prueba pericial "para demostrar su causa de acción de impericia médica".

Por tratarse de una moción dispositiva, tenemos facultad para atender el recurso. Sin embargo, luego de revisar el escrito de los peticionarios y los documentos que obran en autos, resolvemos que no medió prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el foro recurrido, Regla 40 (C) del Reglamento del Tribunal de Apelaciones, *supra,* y que la etapa en que se presenta el recurso no es la más propicia para su consideración porque la determinación recurrida es provisional, por lo que la controversia ante nos no está madura para su propia adjudicación. Regla 40 (E) del Reglamento del Tribunal de Apelaciones, *supra*.

Como si lo anterior fuera poco, no se configura ninguna de las circunstancias que justifican la expedición del auto bajo cualquier otro de los fundamentos de la Regla 40 de nuestro Reglamento.

Finalmente, luego de evaluar el recurso, no encontramos indicios de pasión, prejuicio, arbitrariedad o error manifiesto en la determinación del foro recurrido. La misma cae dentro de su sabia discreción y no abusó de ella, al denegar la solicitud de sentencia sumaria.

**-IV-**

Por los fundamentos antes expuestos, se deniega la expedición del recurso de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda. Lilia M. Oquendo Solís
                        Secretaria del Tribunal de Apelaciones